No. 25-1094

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

**JAMES S. ANDRADE, JR.,**
**Plaintiff-Appellant,**

v.

**MASSACHUSETTS DEPARTMENT OF CORRECTION,**
**Defendant-Appellee.**

_____

On Appeal from the United States District Court
for the District of Massachusetts

_____

**BRIEF OF APPELLEE**

_____


Jeffrey T. Collins
Court of Appeals Bar No. 1139870
Special Assistant Attorney General
MORGAN, BROWN & JOY, LLP
28 State Street, 16th Floor
Boston, MA 02109
(617) 523-6666
jcollins@morganbrown.com

Dated: April 29, 2025                    Attorneys for Appellee

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE ................................................................... 2

STATEMENT OF THE FACTS ................................................................. 3

    A.   The COVID Vaccines Effectively Prevent COVID Transmission ......... 3

    B.   Executive Order 595 Mandates Executive Department
        Employees Be Vaccinated Against COVID ........................................... 4

    C.   DOC Provides Critical In-Person Custodial Care and Control For
        Vulnerable Populations ........................................................................ 5

    D.   Mr. Andrade's Job Responsibilities Must Be Completed In-Person ....... 6

SUMMARY OF THE ARGUMENT ........................................................... 7

ARGUMENT ........................................................................................... 9

   I.   LEGAL STANDARD ..................................................................... 9

  II.   THE DISTRICT COURT PROPERLY ENTERED
       SUMMARY JUDGMENT FOR DOC ............................................. 9

 III.   MR. ANDRADE'S EFFORTS TO MANUFACTURE A DISPUTE
       ABOUT THE EFFICACY OF THE COVID VACCINES
       ARE UNAVAILING .................................................................... 13

CONCLUSION ..................................................................................... 17

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ...................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brox v. Woods Hole*,
 No. CV 22-10242-RGS, 2023 WL 8545141
 (D. Mass. Dec. 11, 2023)..................................................................15

*Bruff v. N. Miss. Health Servs., Inc.*,
 244 F.3d 495, 500 (5th Cir. 2001) .....................................................11

*Cloutier v. Costco Wholesale Corp.*,
 390 F.3d 126 (1st Cir. 2004)..............................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993)..............................................................................9

*DeVore v. Univ. of Ky. Bd of Trs.*,
 693 F.Supp.3d 757 (E.D. Ky. Sept. 20, 2023)...................................12

*Does v. Mills*,
 16 F.4th 20 (1st Cir. 2021)..................................................................15

*EEOC v. GEO GRP., Inc.*,
 616 F.3d 265 (3d Cir. 2010) ...............................................................11

*Ferrari v. Vitamin Shoppe Indus.*,
 70 F.4th 64 (1st Cir. 2023)....................................................................9

*Garrett v. Murphy*,
 17 F.4th 419 (3d Cir. 2021) ................................................................15

*Gent v. CUNA Mut. Ins. Society*,
 611 F.3d 79 (1st Cir. 2010)..................................................................15

*Groff v. DeJoy*,
 600 U.S. 447 (2023)............................................................................10

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**Cases**

*Jones v. Nationwide Life Ins. Co.*,
696 F.3d 78 (1st Cir. 2012)..................................................................11

*Lowe v. Mills*,
68 F.4th 706 (1st Cir. 2023).........................................................10, 13

*Melino v. Boston Medical Center*,
127 F.4th 391 (1st Cir. 2021)........................................................13, 14

*Motorists Com. Mut. Ins. v. Hartwell*,
53 F.4th 391 (1st Cir. 2022)....................................................................9

*Rodrique v. Hearst Communications, Inc.*,
126 F.4th 85 (1st Cir. 2025)...........................................................13, 14

*Ruiz-Rosa v. Rullan*,
485 F.3d 150 (1st Cir. 2007)..................................................................16

*Smith v. City of Atlantic City*,
703 F.Supp.3d 511 (D.N.J. Nov. 28, 2023)..........................................13

*Together Employees v. Mass General Brigham Inc.*,
573 F.Supp.3d 412 (D. Mass. Nov. 10, 2021)......................................10

*United States v. Lupton*,
620 F.3d 790 (7th Cir. 2010)...................................................................9

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**Statutes**

Civil Rights Act of 1964 Title VII.............................................................2, 7, 9, 11

G.L. c. 124..................................................................................................................5

**Other Authorities**

Executive Order 595 ............................................................................................4, 17

*COVID-19 Vaccine Basics*, Centers for Disease Control
and Prevention (September 3, 2024)......................................................................15

## STATEMENT OF THE ISSUES

1.     Did the District Court properly grant summary judgment to the Massachusetts Department of Correction ("DOC") on Plaintiff-Appellant James Andrade, Jr.'s claim of religious discrimination on the basis of undue hardship where he posed a serious risk to health and safety were he to remain unvaccinated and provide custodial care and control of incarcerated individuals at a congregate care facility?

## STATEMENT OF THE CASE

On February 18, 2022, James Andrade, Jr. filed a charge of discrimination and retaliation against DOC with the Equal Employment Opportunity Commission ("EEOC"). On August 25, 2022, the EEOC closed its investigation without making a finding of fault against DOC. RA002. On November 10, 2022, Mr. Andrade filed a complaint alleging religious discrimination against DOC in the United States District Court for the District of Massachusetts. RA001-019.

On June 28, 2024, DOC moved for summary judgment of Mr. Andrade's sole claim for religious discrimination under Title VII of the Civil Rights Act of 1964. RA094-166. DOC's motion was supported by the Declaration of Lawrence Madoff, M.D., which outlined the COVID vaccines' effectiveness and the serious risk to health and safety that unvaccinated workers posed to the vulnerable populations served by DOC. RA139-144. In opposition, Mr. Andrade offered no supporting declarations or expert evidence to refute Dr. Madoff's testimony. On January 13, 2025, the District Court issued its Order allowing DOC's motion for summary judgment. RA318-329. The District Court entered final judgment on January 17, 2025. RA330. On January 23, 2025, Mr. Andrade filed a Notice of Appeal. RA331.

For the reasons explained herein, this Court should affirm.

## STATEMENT OF THE FACTS

**A.     The COVID Vaccines Effectively Prevent COVID Transmission**

COVID-19 is an infectious, contagious disease that can cause serious complications, hospitalization, and death. By August 19, 2021, approximately 18,000 people had died from COVID in the Commonwealth of Massachusetts. By January 11, 2022, that number had jumped to 20,275 confirmed deaths, and 1,264,925 confirmed cases, in the Commonwealth alone. RA120 ¶7; RA119 ¶¶1-2. COVID was (and remains) dangerous to the public health. RA120 ¶4.

Fortunately, widespread vaccination can prevent the spread of the disease. RA120 ¶¶8-9. By January 2021, the U.S. Food and Drug Administration had authorized three COVID vaccines: one each from Pfizer-BioNTech, Moderna, and Johnson & Johnson. RA120 ¶10. All three COVID vaccines are highly effective at reducing the burden of infection with all known variants of SARS-CoV-2, the virus that causes COVID, and are even more effective at reducing the risk of serious illness and death. RA121 ¶13. Unvaccinated individuals are at much higher risk of infection, serious illness, and death, and therefore at much higher risk of transmitting COVID to their contacts—including in their homes and communities and in occupational settings. RA121 ¶14. In the Fall of 2021, obtaining a COVID vaccine made in-person contact safer. RA121 ¶15. As no vaccine is 100 percent effective, some people who are fully vaccinated against COVID will still contract the disease,

but these "breakthrough" cases generally result in less severe disease and less risk of hospitalization and death. RA121-122 ¶16.

Prior to the approval of the COVID vaccines, testing, masking, and social distancing were among the most effective available methods for preventing the spread of the virus. While these methods continue to be useful in lessening the spread of COVID, as of the Fall of 2021, vaccination became the single most effective method for reducing the risk of COVID infection and for reducing the risk of hospitalization and death for those infected. RA122 ¶¶17-18. Since they became widely available, the COVID vaccines have been effective in preventing COVID infection and preventing COVID transmission. RA122-123 ¶20.

## B. Executive Order 595 Mandates Executive Department Employees Be Vaccinated Against COVID

On August 19, 2021, Governor Baker issued Executive Order 595 ("EO 595"). RA123 ¶22. The Executive Order explained that vaccination was the most effective tool for combatting COVID and was a proven measure for reducing hospitalization and severe illness. RA123 ¶23. To ensure that the executive department could provide the full measure of public services to the residents of the Commonwealth, EO 595 ordered all executive department employees to show proof of vaccination by October 17, 2021, and to maintain full COVID vaccination as a condition of continued employment. RA124 ¶24. The Executive Order also required that state agencies implement a procedure to allow exemption from the vaccination

requirement where a reasonable accommodation could be reached for any employee not able to receive COVID vaccination due to medical disability or a sincerely held religious belief. RA124 ¶25.

###### C.   DOC Provides Critical In-Person Custodial Care And Control For Vulnerable Populations

DOC is an agency within the Commonwealth's Executive Office of Public Safety and Security. DOC oversees the state prison system and provides custody, care, and programming for those under its supervision to prepare them for safe and successful reentry into the community. DOC manages fourteen correctional institutions and various administrative offices across the state and employs over 4,800 employees, supporting a 24-hour, seven-day a week statewide operation. DOC is statutorily mandated, under chapter 124 of the Massachusetts General Laws, to maintain security, safety, and order at all state correctional facilities and to establish, maintain, and administer programs of rehabilitation, including education, training, and employment of incarcerated individuals committed to the agency's custody. RA125-126 ¶¶33-34. In DOC institutional settings, regardless of security level, incarcerated individuals are constantly monitored by correctional and clinical staff who are necessarily always present. RA126 ¶35.

As a public safety agency, DOC provides a critical service to the Commonwealth that no other entity provides. DOC had (and continues to have) a compelling penological interest in maintaining adequate staffing levels in its

facilities during the pandemic in a manner that inmates and staff can trust will keep them safe from acquiring COVID. In the Fall of 2021, this meant vaccination. Maintaining sound health within DOC facilities is important for ensuring public trust in DOC, Commonwealth services, and its public institutions. RA131 ¶¶52-53.

### D. Mr. Andrade's Job Responsibilities Must Be Completed In-Person

As a Correction Officer, Mr. Andrade was responsible for maintaining custodial care and control of incarcerated individuals—often in close contact with them. RA133-134 ¶¶60-61. His job duties and responsibilities included monitoring inmates' movements, conduct, and behavior; escorting and transporting inmates; overseeing and directing incarcerated individuals during work assignments; investigating suspicious activity, including by searching individuals; responding to emergency situations such as threats, assaults, and medical emergencies; and serving food to inmates. *Id*. Given its relative ineffectiveness, masking could not adequately minimize the risk that Mr. Andrade would contract and transmit the highly contagious COVID virus to incarcerated individuals or other DOC staff. RA134 ¶¶62-63. And given Mr. Andrade's job duties, social distancing was also not an option. RA134 ¶¶62-63. Accordingly, DOC determined that permitting Mr. Andrade to work in-person, in an enclosed space, in close proximity to incarcerated individuals with whom he was required to interact face-to-face in the absence of COVID vaccination was neither an effective nor reasonable accommodation.

RA135-137 ¶¶69-72. DOC determined that permitting Mr. Andrade to perform his custodial care duties while unvaccinated would have imposed substantial increased costs and a substantial burden to DOC's health and safety operations, as well as the public trust. *Id*.

## SUMMARY OF THE ARGUMENT

Summary judgment properly entered for DOC because there was no genuine dispute about any material fact. In his one-count Complaint, Mr. Andrade alleges that DOC subjected him to religious discrimination, in violation of Title VII, when it denied his request for a COVID vaccine exemption. But DOC proffered overwhelming and uncontroverted evidence that granting Mr. Andrade's request for an exemption would have resulted in undue hardship to DOC. Mr. Andrade was responsible for maintaining custodial care and control of incarcerated individuals. RA133-134 ¶¶60-61. His job duties encompassed a number of responsibilities that required him to be in close contact with those individuals, including escorting and transporting inmates under restraint, physically searching them to investigate suspicious activity, and serving them food. *Id*. All of this was done in a congregate care setting. Permitting Mr. Andrade to work in-person, in an enclosed space, in close proximity to inmates with whom he was required to interact face-to-face in the absence of COVID vaccination was neither an effective nor reasonable accommodation. RA135-137 ¶¶69-72. The evidence in the record left no genuine

dispute that permitting Mr. Andrade to perform his work while unvaccinated would have imposed substantial increased costs and created a substantial burden on DOC operations. It also would have put at great risk the safety and welfare of the vulnerable populations DOC serves, as well as Mr. Andrade himself and his coworkers. RA135-137 ¶¶69-72.

At both summary judgment and now on appeal, Mr. Andrade failed to proffer evidence to show that his request for an exemption could have been accommodated without undue hardship. He did not dispute DOC's evidence concerning the nature of his work or his essential job functions. In fact, Mr. Andrade did not engage with, or even mention, the specifics of his job duties and responsibilities. Instead, he argued only against the effectiveness of the COVID vaccines, contending that a genuine dispute exists as to the efficacy of the vaccines because of supposed deficiencies in the testimony of DOC's expert, Dr. Madoff.[1] As the District Court explained, however, Dr. Madoff's testimony—unrefuted by any expert testimony at all from Mr. Andrade—would not leave a reasonable juror in doubt about the efficacy of the COVID vaccines. Instead, as the District Court found, DOC met its burden in showing that Mr. Andrade's request for an exemption from the vaccine

---

[1] In making this argument, Mr. Andrade largely repeated arguments made in his motion to strike Dr. Madoff's declaration, which the District Court denied. RA185-240; 305-310; 316-317.

requirement could not have been accommodated without imposing a substantial burden and undue hardship on DOC.

The District Court properly entered summary judgment in favor of DOC, and this Court should affirm.

## **ARGUMENT**

### I. **Legal Standard**

The Court reviews a District Court's grant of summary judgment de novo. *Ferrari v. Vitamin Shoppe Indus.*, 70 F.4th 64, 69 (1st Cir. 2023). A party is entitled to summary judgment when the record reveals no genuine issue as to any material fact and judgment is proper as a matter of law. *Motorists Com. Mut. Ins. v. Hartwell*, 53 F.4th 730, 734 (1st Cir. 2022).

The District Court serves as a gatekeeper with respect to decisions concerning the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Provided the District Court adheres to the parameters set forth in *Daubert*, the appellate court's review of the District Court's decision to admit or exclude expert testimony is deferential. *United States v. Lupton*, 620 F.3d 790, 798-799 (7th Cir. 2010).

### II. **The District Court Properly Entered Summary Judgment For DOC**

A two-part framework applies to Mr. Andrade's religious discrimination claim under Title VII. "First, [Mr. Andrade] must make [his] *prima facie* case that a bona fide religious practice conflicts with an employment requirement and was the

reason for the adverse employment action." *Lowe v. Mills*, 68 F.4th 706, 720 (1st Cir. 2023). Second, if Mr. Andrade establishes his *prima facie* burden, "the burden then shifts to [DOC] to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." *Id.* Here, the District Court held that it did not need to assess whether Mr. Andrade met his *prima facie* burden on step one, because it concluded that DOC's evidence showed beyond genuine dispute that allowing Mr. Andrade's request for an exemption from the COVID vaccine requirement would have imposed substantial increased costs and increased health and safety risks, resulting in undue hardship to DOC. RA318-329.

An accommodation poses an undue hardship when allowing it "would result in substantial increased costs in relation to the conduct of [the employer's] business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023). To determine whether the burden is "substantial," the Court must consider "all relevant factors . . . including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [the] employer.'" *Id*. These considerations "include not only direct economic costs, but indirect ones related to health and safety." *Together Employees v. Mass General Brigham Inc*., 573 F.Supp.3d 412, 435 (D. Mass. Nov. 10, 2021). Reputational effects on an employer can also impose an undue hardship, and an employer's "loss of control over its public image" may be a relevant factor.

*Cloutier v. Costco Wholesale Corp.,* 390 F.3d 126, 136-137 (1st Cir. 2004). Moreover, and as particularly relevant here, an accommodation can result in undue hardship if it "creates a genuine safety or security risk"—especially when the defendant is "an employer-prison." *EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 273 (3d Cir. 2010). Finally, courts have recognized that Title VII does not require elimination of the essential function of a job: it imposes an undue burden to require an employer to relieve an employee of his essential duties and assign them to another employee. *See, e.g.*, *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78 (1st Cir. 2012); *Bruff v. N. Miss. Health Servs., Inc.,* 244 F.3d 495, 500 (5th Cir. 2001).

Applying these standards, the District Court properly concluded, on the undisputed record before it, that allowing Mr. Andrade's request for an exemption from the vaccine requirement would have resulted in undue hardship. As a Correction Officer, Mr. Andrade was responsible for maintaining custodial care and control of incarcerated individuals. RA133-134 ¶¶60-61. His essential job responsibilities included monitoring inmates' movements, conduct, and behavior; escorting and transporting incarcerated individuals under restraint; overseeing and directing inmates during work assignments; investigating suspicious activity, including by physically searching individuals; responding to emergency situations such as threats, assaults, and medical emergencies; and serving food to incarcerated individuals. *Id*. These duties required Mr. Andrade to work in-person, in an enclosed

space, in close proximity to incarcerated individuals with whom he needed to interact face-to-face in a congregate care setting. RA135-137 ¶¶69-72. As the District Court explained, alternatives like masking or testing could not have adequately minimized the risk of Mr. Andrade contracting and transmitting the contagious COVID virus to incarcerated individuals or other DOC staff. RA326. The consequences of such transmission were substantial: as the District Court recognized, "any exposure to the virus among DOC personnel temporarily reduced the available staffing and, consequently, the services that the agency could provide." *Id.* Indeed, "by the fall of 2021," DOC had already "face[d] severe staffing shortages, due in part to COVID-19 infections among its personnel and the corresponding mandatory isolation periods." *Id.* Nor could Mr. Andrade socially distance or work remotely: as the District Court explained, "he could not have possibly performed his job duties from afar." *Id.*

For all these reasons, permitting Mr. Andrade to perform his duties unvaccinated would have imposed substantial increased costs and a substantial burden to DOC's health and safety operations, and the public trust. RA134 ¶62; RA136 ¶71-72. It was simply not possible to allow Mr. Andrade to perform his job duties unvaccinated. RA133-134 ¶¶ 60-61. *See DeVore v. Univ. of Ky. Bd of Trs., 693 F.Supp.3d 757, 765-66 (E.D. Ky. Sept. 20, 2023)* (allowing department manager to work remotely full time or forcing employer to hire another employee would have

caused undue hardship); *see also Smith v. City of Atlantic City*, 703 F.Supp.3d 511, 524-525 (D.N.J. Nov. 28, 2023) (allowing firefighter to grow a beard for religious reasons, which would have prevented him from properly donning an air mask, thus prohibiting him from responding to emergencies, was an undue hardship). In recent years, this Court has repeatedly concluded—in cases involving various employment settings—that allowing an exemption from COVID vaccination requirements would impose undue hardship. *See, e.g.*, *Melino v. Bos. Med. Ctr.*, 127 F.4th 391, 397 (1st Cir. 2025) (affirming summary-judgment determination that providing exemption from defendant's vaccination requirement would impose undue hardship); *Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 94 (1st Cir. 2025) (same); *Lowe v. Mills*, 68 F.4th at 721 (same, at motion-to-dismiss stage). Mr. Andrade does not grapple with these decisions or offer any reason why this case is different—because it is not.

## III. Mr. Andrade's Efforts To Manufacture A Dispute About The Efficacy Of The COVID Vaccines Are Unavailing

On appeal, Mr. Andrade does not engage with, or even mention, the specifics of his job duties and responsibilities. RA241-304. For example, he does not contest that part of his job required him to maintain in-person custodial care and control of incarcerated individuals in a congregate care setting. Nor does he does contest that this work required him to work in-person, in an enclosed space, in close proximity to, and face-to-face with incarcerated individuals. *Id*. Instead, the totality of his

argument rests on his belief—unsupported by the record—that the COVID vaccine is not effective.

As the District Court explained, however, DOC proffered overwhelming and unrebutted evidence of the effectiveness of the COVID vaccines, including the declaration of Lawrence Madoff, M.D., the medical director of the Massachusetts Department of Public Health's Bureau of Infectious Disease and Laboratory Science. RA120 ¶¶8-10, 13-21, 29-32, 37, 47-48, 51-55, 62-63, 70; *see* RA140-144. Mr. Andrade failed to introduce any evidence, expert or otherwise, to dispute this evidence. *See Rodrique*, 126 F.4th at 93 (plaintiff's undue hardship argument fails because no medical evidence in the summary judgment record contradicts defendant's conclusion that vaccinated people are less likely to infect others). Thus, as the District Court properly concluded, these facts are not disputed in the record.

Case law confirms that there is no genuine dispute. In *Rodrique*, this Court affirmed the summary-judgment determination of undue hardship where the record demonstrated that defendant relied on the objective, scientific information available to it, with particular attention to the views of public health authorities. *Id.* at 85; *see also Melino*, 127 F.4th at 397-397 ("[I]t is uncontroverted that BMC implemented its vaccine requirement based on the CDC's recommendations, which describe vaccines as mitigating effects and spread of COVID-19."). DOC did the same here. The Centers for Disease Control and Prevention ("CDC") advised that "COVID-19

vaccines are safe and effective, especially against severe illness, hospitalization, and death." *COVID-19 Vaccine Basics*, Centers for Disease Control and Prevention (September 3, 2024).[2] And this Court can take (and indeed has taken) judicial notice of the effectiveness of COVID vaccines in preventing infection and transmission of COVID. *See Does v. Mills,* 16 F.4th 20, 33 (1st Cir. 2021) ("The COVID-19 vaccines protect against infection and lower the risk of adverse health consequences, including death, should a vaccinated person become infected. Vaccination also reduces a person's risk of transmitting COVID-19 to others"); *Gent v. CUNA Mut. Ins. Society*, 611 F.3d 79, 84, n.5 (1st Cir. 2010) (court takes judicial notice of relevant facts and information from CDC website); *see also Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (court takes judicial notice of effective COVID-19 vaccines); *Brox v. Woods Hole*, No. CV 22-10242-RGS, 2023 WL 8545141, *1, n.2 (D. Mass. Dec. 11, 2023) (where accuracy of CDC information cannot reasonably be questioned, court may take judicial notice of these facts). DOC was entitled to rely on this public health guidance.

Rather than proffer his own evidence, Mr. Andrade repeats arguments he made in his motion to strike Dr. Madoff's declaration (which the District Court denied), contending that that a genuine dispute exists as to the efficacy of the vaccines because of supposed inconsistencies in Dr. Madoff's testimony. Br. 6-10.

---

[2] https://www.cdc.gov/covid/vaccines/how-they work.html

Specifically, Mr. Andrade argues that Dr. Madoff testified that he did not know either the absolute risk reduction or the relative risk reduction of any of the COVID vaccines; that the likelihood of a vaccinated person catching COVID is "substantially less" than that of an unvaccinated person; that he did not know the risk of a fully vaccinated person contracting COVID and testified that this is a question that "can only be answered at a population level"; that the reasons for the transmission of COVID between people who have been vaccinated against COVID depends on many "nuanced factors" including "the time since vaccination"; but that he has done no primary research into the waning effectiveness of the vaccines." Br. 10. But as the District Court properly concluded, Dr. Madoff's testimony would not leave a reasonable juror in doubt about the efficacy of the vaccines.

In criticizing Dr. Madoff's testimony, Mr. Andrade relies exclusively on allegations from his own complaint. He does not present any scientific evidence refuting the efficacy of the vaccines at reducing the health risks of COVID, or any expert testimony of his own. This is insufficient to prevail in creating a genuine issue of fact. *See Ruiz-Rosa v. Rullan*, 485 F.3d 150, 156 (1st Cir. 2007) ("A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. Allegations made in a plaintiff's complaint, standing alone, are not enough to oppose a properly supported motion for summary judgment." (citation omitted)). Moreover, regardless

of Dr. Madoff's ability to verify particular risk and transmission rates at his deposition, as the District Court correctly noted, data publicly available at the time of Executive Order 595's enactment established that the vaccines were effective in reducing infection and transmission rates of COVID. RA140-144 ¶¶20, 25, 26; RA329. As a result, Mr. Andrade did not raise a genuine dispute of material fact as to whether granting him an exemption to the vaccine requirement would cause an undue burden.

Ultimately, the burden was on DOC to show that allowing Mr. Andrade's accommodation request would have resulted in undue hardship. As the District Court properly concluded, DOC met its burden by proffering ample, uncontroverted evidence of Mr. Andrade's specific job responsibilities, which require in-person interactions, and of the vaccine's effectiveness. Accordingly, DOC requests that this Court affirm the District Court's ruling awarding summary judgment in its favor.

## CONCLUSION

For the foregoing reasons, DOC respectfully requests that this Court affirm the Order and Judgment of the District Court.

Respectfully submitted,

MASSACHUSETTS DEPARTMENT OF
CORRECTION,

By Its Attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

 */s/ Jeffrey T. Collins*
Jeffrey T. Collins
Court of Appeals Bar No. 1139870
Special Assistant Attorney General
MORGAN, BROWN & JOY, LLP
28 State Street, 16th Floor
Boston, MA 02109
(617) 523-6666
Dated: April 29, 2025          jcollins@morganbrown.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,683 words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

*/s/ Jeffrey T. Collins*
Attorney for Appellee

Dated: April 29, 2025